21-1348 and 21-1352, and as well as the Camelot Acquisition Secondary. Thank you. Well, who's on that side? Mr. Penn? Mr. Miller? Do we have the SEC lawyer on video? I just understood from the instructions that I should keep my video off unless I'm actually presenting. You know what? Stay online. It's fine. Okay. Mr. Penn? May it please the court, good morning, your honors. My name is Lawrence Penn. I'm here representing myself today and thank the court for its consideration. The issues presented on appeal are limitations of disgorgement and turnover, given the requirements under Lew v. SEC, due process and excessive fines. First, some facts. I didn't admit to federal securities fraud violations. I did not admit to receiving $9.3 million in ill-gotten gains. The district court's reliance on the state's criminal action for proof of the $9.3 million is erroneous and never proven and analyzed pursuant to Lew. I'm asking this court to make sure I receive due process pursuant to the standards and requirements of Lew. This ordeal started when the SEC filed a complaint with erroneous allegations, sought and obtained an asset freeze, referred the matter to Manhattan District Attorney, where I was charged with grand larceny and attached charges. The DA requested $5 million in bail, which I couldn't pay. As such, I sat in jail for 14 months. Finally, entering an attenuated plea in exchange for serving a minimum of two years. To get this deal, I was required to forfeit my interest in the partnership that I put together. The SEC's case here is built on my attenuated plea contrary to People v. Zinke and alleged admissions in my amended answer. I respectfully ask this court to examine the language of the attenuated plea When you carefully examine it, you'll see that I never admitted to the factual allegations underlying the charges, which in my opinion were false. Rather, I only admitted to being charged and indicted for two alleged offenses. That's all I did. This is extremely important because the district court relies on the plea and my answer to conclude that I violated federal securities laws. After being released from prison, I did my best to answer the complaint, per se. I'd ask you to take a look at that answer, paragraphs 2 through 6 of the amended answer in A78, page 78 to 80, which the district court cites to justify the basis for the securities violation. The district court has mischaracterized my statements in my plea, conduct, and answer. Every step of the way, the district court has gone out of its way to construe evidence against me and deny me due process. I ask the court for help. The most recent example of this is the denial of this Rule 60B, which is why we're here today. I read New versus SEC, and in this decision I understand that deducting expenses and preventing joint and several liability. The district court applied and produced an exception which doesn't exist. Again, the district court denied me fair and due consideration. Despite this district court's denial of due consideration, a semblance of due process has begun to appear from the governor of New York State, who took the extraordinary step of issuing a full and unconditional pardon. Why did the governor issue a full and unconditional pardon? Because of people versus Zinke. Where the court of appeals in the state of New York held that a general partner in limited partnership cannot be charged or found guilty of larceny, pointing to joint or common ownership. The district court and SEC have repeatedly acknowledged my beneficial ownership and interest as a general partner in limited partnership. As such, Zinke precludes the validity of the prosecution, conviction, and the SEC's case. The state has begun to rectify this foundational error through the gubernatorial pardon. I ask this court to give me due process and vacate the district court's denial of my Rule 60B, and remand for further proceedings to a different judge. I also note that there are state proceedings that have to happen to process the pardon. Thank you. What are the state proceedings? You have to take the pardon down to the state court. That state court will look at the facts, so there's a disagreement between the state court and the federal district court judge with regard to my general partnership interest. The federal court ruled, and now that they know, it goes back in light of what the governor, former attorney general, who said, this is a pardon based on innocence. Thank you very much. Mr. Pender, you've reserved a minute for rebuttal. Yes, Your Honor. We'll hear from Mr. Miller on behalf of Camelot. Good morning. May it please the court. My name is Keith Miller. I'm the law firm of Perkins Coie and represent the entities, the Camelot entities, and the non-party entities. The question before this court is whether the district court's denial of the entity's Rule 60B6 motion should be overturned as being inconsistent with the Supreme Court's decision in Liu v. SEC. That case came down in June of 2020. As we know, disgorgement is an equitable remedy designed to deprive the wrongdoer from profiting from this wrongdoing. It's an attempt to restore the status quo. Indeed, as this court held in Kavanaugh, SEC v. Kavanaugh, disgorgement should not be duplicative lest it would exceed the amount gained and acquire a punitive nature. Here the district court erred for three reasons. First, the district court acknowledged that the disgorgement order against Mr. Penn and the entities was duplicative. Specifically, the court on page 13 of its March 13, 2020 memorandum granting the SEC summary judgment against the entities stated, The court previously ordered Mr. Penn to disgorge the entirety of the ill-gotten gains from the fraud, $9,286,916. CASO management and CGI, the entities that I represent, ill-gotten gains of $9,067,004. I'm sorry, you're reading from where? Page 13 of the March 13, 2020 memorandum order. It's SPA Special Appendix 59 at page 59. Okay, got it. The entities gain of $9 million are a subset of that amount. Having found that the entities' ill-gotten gains are a subset, the district court's disgorgement order must be deemed to be duplicative and hence punitive. Second and most importantly, the district court erred when it improperly imposed joint and several liability between Mr. Penn and the entities without determining the amount of actual profit that had accrued to the entities. The reason I wanted to ask about this specific page is that actually the court says it recognizes that disgorgement should not be duplicative. That's page 13. And it says to avoid duplicative recovery, the court finds CASO management and CGI jointly and separately liable with Penn for disgorgement. And Lew, as I understand it, doesn't foreclose joint and several liability. So what is your argument? I agree, Your Honor. Lew does not per se prohibit joint and several liability. But the court, I think, is clear in stating that the alleged profits, the court must determine the alleged profits that accrued to those individuals. The citations that the SEC relies on after the Lew decision from the district courts, if you look at those decisions, those generally involved individuals. Here, the entity's liability was imputed based on Mr. Penn's conduct. So the issue here is can the court order disgorgement based on imputed conduct? Although corporations can be criminally charged and held liable, we've seen that before, for acts of its employees, a corporation has no mens rea.  The court should similarly find here that in a civil context, that although a corporation can be held responsible for the actions of its control person, equity demands that the corporation cannot be responsible for disgorgement, which it never received. Hang on. I have a disconnect between those two points. What does that have to do with imputing mens rea of an agent to a principal? Why wouldn't you? That's how corporations are found liable for crimes that require some form of mens rea. You impute. You impute to mens rea. I don't think mens rea is the point that I was pointing at. I think it's the idea of- Just go through that again, Nick, because I don't follow why you were talking about that. So I would argue that in a criminal context, a corporation can't be sent to prison. It's impossible. But the individual can. Right, but the way that you find a corporation criminally responsible and find them and do all the other things is by imputing the mens rea. Right, but now we're talking about the relief that is being afforded in this situation in the civil context. Right, but the imputation of mens rea is standard. It's just a question of what the penalties are, and it has nothing to do with the ability or inability to impute the actions or the ill will or the evil state of mind of a principal. What I would argue here, Your Honor, is the court erred in not finding out and not determining how much of the disgorged amount actually accrued to the entities. There's no finding here at all. It was 9.2 million was misappropriated. Mr. Penn is associated and controls these two entities. Money flowed through these entities. We can't, we don't know where the money is. The record is unclear as to whether the improper, ill-gotten gains. This is your fundamental argument.  Okay. Reside with. Reserve some time for rebuttal. Yes. We'll hear from the SEC, and then we'll hear back from you, Mr. Penn, and then thereafter, Mr. Miller. Mr. Sterl Selsky. Can you hear us? Yes, Your Honor. Can you hear me? Yes. Please proceed. Thank you, Your Honor. Rule 6BP6 relief is reserved for extraordinary circumstances. And it needs to be made quite clear that it's hardly extraordinary for the Supreme Court to arrive at a different interpretation of the law than the courts of appeal. And so even if the appellant here were right, that the judgments against them contravene lieu, and to be clear, they're wrong about that. But even if they were right, that would not entitle them to relief because they haven't even tried to allege any extraordinary circumstances beyond the claim to change the law. Now, the rule, of course, applies to cases that were pending on the date that the Supreme Court decided that case. It applies to newly instituted actions. You've had several cases already. You'll continue to be presented with an opportunity to grapple with the Supreme Court's guidance in that case. But the rules of civil procedure, precedent, public policy, they all draw a line at finality for all but extraordinary cases, which this case isn't. So it's just not the proper vehicle for addressing those issues. I think the only thing that I wanted to address, unless the court has any questions, is this argument that Mr. Miller made about where the funds accrued. The district court said at Special Appendix 54 that any funds going to the K-11 effectively went to the pen. And what the court is trying to do with the joint and several order is, as Judge Boyer pointed out, is to avoid duplicative recovery. It's not the situation that the Supreme Court was troubled by. Where, cited as an example, the Contarinas case, where Contarinas never personally controlled the profits. He did not control disbursement of the proceeds. And the benefits accrued to a third party. Here, the benefits accrue to the entities, and they accrue also to Penn for the simple reason that he controls them. And so, in our view, you don't need to reach this issue at all. But just to give the court comfort, that aspect of the disbursement award is entirely consistent with it. All right. Unless the court has any questions, we would ask the Supreme Court to approve it. Thank you very much. Mr. Penn. Your Honor, this is extraordinary. A federal pardon implies guilt. A state pardon is an extraordinary act. Implied innocence. And here I am innocent. The district court and the SEC acknowledge our general partner limit partnership and joint common owner. Which means I put money into this partnership, and that's validated on this record. Which means I own the right to distributions. And I have the right to spend the money on expenses as well as investments. That's exactly what I did, and the partnership exists today. And what this pardon is doing is saying, judgment's out. Go back and get my half of the partnership. And the other half of the partnership should be returned to me once this is turned around. This is extraordinary. It's different from a federal pardon. And benefits accrued to all of the people who put money in the partnership. Mr. Penn? Yes, Your Honor. You sent us a motion that I received this morning seeking to certify. I guess we would have to do it. You couldn't certify. You're asking us to certify to the State Court of Appeals. The question of whether your pardon grants you innocence under New York State law. It's my understanding that the pardon just relieves the punishment of your conviction, but doesn't grant you innocence. There's a process that the pardon has to go to the court. And then with innocence, the court then returns it back to as if I had won beyond a reasonable doubt. So there's a process that has to happen. What we're asking, and one of the problems that happened here is that the Court of Appeals of the State of New York never heard this on its merits as required by Supreme Court standard. Which says, where a claim implicates a power for the state to convict, it must be heard on its merits. This tool, 27-2, will allow that to say, hey, court, what does a pardon mean in light of the fact that he was a general partner in a partnership in Zinke? You're in law. But you also made separate admissions in the civil litigation that the FCC points to. I would ask you to take a close look at those. And when you take a close look at those admissions- Assume that we have. So explain to me why those are not enough. When you take a look at paragraph six, for all the allegations of 206, 1, and 2, and 207, I denied. In black and white here, I denied that. Now, 207 went to material misrepresentation of my education. In essence, the SEC said, he didn't get two of his three master's degrees. That's a material misrepresentation. That ended up going away, and I acknowledge that the court did that. But I denied section 206, 1 and 2 completely. And so what the court is saying is that I admitted it, but I didn't, and it's right here in black and white. Do you have a pen? This is page three of the answer. This is document 125 of the district court record, the amended answer. So these are paragraphs two through six. Okay. And when you go to paragraph six, at the end it says, defended, denied violations of section 206, 1, 2, and 207. And obviously they accepted 207 because a quick phone call to a registrar would recognize it. I did get all three of my master's degrees. Okay, thank you. Thank you, Your Honor. Mr. Miller. Let me just, in rebuttal, state that this is an extraordinary case. This case involves- So you have lieu. We have SEC- You have lieu before. So there was some time before that the 60B motion was filed, actually a significant amount of time. You had all this information, and I think what the SEC's argument is, is what justified the delay in filing the 60B motion? It's a very technical argument, but- The 60B motion was made in September of 2020. A few months, four months after lieu versus SEC. It's a very short time period. The time for repeal was- You just told me it's obvious from lieu that the discouragement order was improper from the face of lieu. Why did it take as long as it did to file a 60B motion? And why is that an extraordinary circumstance that justifies that significant amount of time in delay? Unfortunately, the entities were not represented. But wasn't that because of Mr. Penn firing counsel? That's correct. In 2019, he fired counsel. They did not have counsel from 2019 until I agreed to represent the entities in August, shortly after lieu. And then promptly we notified the court and then filed the Rule 60B based on the theory that joint and several liability. In this situation, under these facts, where there is not a record of what amount was misappropriated by the entities, would be improper. So the district court, as I understand it, concluded that it rejected the argument about representation on the ground. That it was not an innocent excuse. What's your response to that? Yeah. Actually, you don't have to respond if you don't want to. Yeah, I think the point here is that, unfortunately, the entities did not have representation when lieu came down. And as soon as lieu came down and Mr. Penn was made aware of it, he searched for a law firm to take this on, and we agreed to take it on. Thank you very much. Thank you. Thank you. Thank you, Mr. Penn. So we'll reserve the decision. You'll get a decision from us in due course.